IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Dennis Ray Moore,<br><br>    Plaintiff(s),<br><br>  v.<br><br>BP Exploration & Production, Incorporated, BP America Production Company, BP p.l.c., Transocean Holdings, LLC, Transocean Deepwater, Inc., Transocean Offshore Deepwater Drilling, Inc., and Halliburton Energy Services, Inc.,<br><br>    Defendants. | Civil Action No. 2:17-cv-03574-JTM-JVM<br><br>Judge Jane Triche Milazzo<br><br>Mag. Judge Janis van Meerveld<br><br>Section "H" |

**FIRST AMENDED COMPLAINT**

**<u>Jury Trial Demanded</u>**

The above referenced Plaintiff/Plaintiffs ("Plaintiff") now files this First Amended Complaint. Plaintiff alleges as follows:

**I. BACKGROUND**

1. This action arises out of the April 20, 2010 explosion of the MODU Deepwater Horizon as it was in the process of temporarily abandoning a well, known as Macondo, it had drilled on the Outer Continental Shelf off the coast of Louisiana.

2. The explosion resulted in millions of gallons of crude oil being discharged into the Gulf of Mexico over 87 days (hereinafter sometimes referred to as the "Oil Spill").

3. As set forth herein, Plaintiff has suffered both acute and chronic injuries resulting from the negligent and reckless actions of Defendants in causing the explosion and Oil Spill, and the negligent and reckless actions of Defendants in failing to properly design and implement a

1

response to the Oil Spill that would protect Plaintiff from the impacts of the discharge of oil and use of chemical dispersants.

## II. PARTIES

4. Plaintiff adopts and incorporates herein by reference Plaintiff's citizenship and residency allegations as set forth in Plaintiff's original Complaint, and the factual allegations contained in Plaintiff's Sworn Statement form attached as Exhibit "A" to the original Complaint (hereinafter "Exhibit "A").

5. Plaintiff timely opted out of the Medical Benefits Class Action Settlement ("Class Settlement"), and/or Plaintiff has been excluded from participation in the Class Settlement by the terms of the Class Settlement agreement.

6. Plaintiff brings this case against the following Defendants:

   a. BP Exploration & Production, Inc. ("BP Exploration"), is a Delaware corporation with its principal place of business in Warrenville, Illinois. This Court has personal jurisdiction over BP Exploration because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in the State of Louisiana.

   b. BP America Production Company ("BP America"), is a Delaware corporation with its principal place of business in Houston, TX. This Court has personal jurisdiction over BP America because BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in the State of Louisiana.

   c. BP Exploration and BP America are sometimes referred to jointly as the "BP Defendants".

d. BP p.l.c., is a British public limited company with its corporate headquarters in London, England. This Court has general jurisdiction over BP p.l.c. pursuant to Louisiana's long-arm general jurisdiction provision in combination with Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure.

e. Transocean Holdings LLC ("Transocean Holdings"), is a Delaware Corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over Transocean Holdings because Transocean Holdings maintains continuous and systemic contacts in the State of Louisiana.

f. Transocean Deepwater Inc. ("Transocean Deepwater"), is a Delaware Corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over Transocean Deepwater because Transocean Deepwater maintains continuous and systemic contacts in the State of Louisiana.

g. Transocean Offshore Deepwater Drilling Inc. ("Transocean Offshore"), is a Delaware Corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over Transocean Offshore because Transocean Offshore maintains continuous and systemic contacts in the State of Louisiana.

h. Transocean Holdings, Transocean Deepwater and Transocean Offshore are sometimes referred to jointly as "Transocean".

i. Halliburton Energy Services, Inc. ("Halliburton"), is a Delaware Corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over Halliburton because Halliburton is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

### III. JURISDICTION AND VENUE

7. Jurisdiction exists before this Court pursuant to Article III, Section 2 of the United States Constitution, which empowers the federal judiciary to hear "all Cases of admiralty and maritime Jurisdiction."

8. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1333.

9. This Court also has jurisdiction over this action pursuant to The Admiralty Extension Act, 46 U.S.C. § 30101, which extends the admiralty and maritime jurisdiction of the United States to cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land.

10. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11. Venue is appropriate in this District under 28 U.S.C. § 1391, because the events or omissions giving rise to the claims asserted herein occurred in this District. Venue is also appropriate in this District consistent with 28 U.S.C. § 1407 and the Transfer Order, subject to the provisions of the Direct Filing Order.

### IV. ADOPTION AND INCORPORATION OF FINDINGS OF FACT AND CONCLUSIONS OF LAW

12. On August 10, 2010, the United States Judicial Panel on Multidistrict Litigation transferred most federal cases arising from the Oil Spill to Untied States District Court Judge Carl Barbier in the Eastern District of Louisiana, Multidistrict Litigation no. 2179 ("MDL 2179").

13. Plaintiff adopts and incorporates by reference the facts and conclusions of law determined by Judge Barbier in the Phase One trial. *See* Findings of Fact and Conclusions of Law, Rec. Doc. 13355.

14. The facts and conclusions of law adopted herein include, but are not limited to, those set forth the below:

  a. The BP Defendants, Transocean and Halliburton engaged in conduct that was negligent or worse and a legal cause of the blowout, explosion, and oil spill.

  b. The BP Defendant's conduct was reckless. Transocean's conduct was negligent. Halliburton's conduct was also negligent.

  c. The comparative fault of the Defendants, expressed as a percentage of total liability, is as follows: BP: 67 percent; Transocean: 30 percent; and Halliburton: 3 percent.

  d. These findings of negligent conduct or worse and legal causation are binding final judgments as to the BP Defendants, Transocean and Halliburton and therefore operate as a bar to re-litigation of those issues by operation of *res judicata* and/or issue preclusion doctrines.

## V. JUDICIAL ADMISSIONS BY THE BP DEFENDANTS

15. On or about April 18, 2012, Interim Class Counsel, the Plaintiffs Steering Committee and the BP Defendants, filed Plaintiffs' and BP's "Joint Motion For Preliminary Approval Of Proposed Medical Benefits Class Action Settlement, Approval of Class Notice and Related Matters" (hereinafter "Joint Motion"). MDL Rec. Doc. 6267.

16. In support of the Joint Motion filed by the BP Defendants to approve the settlement, declarations of experts were submitted for the purpose of the Court relying on the statements of such experts to approve the proposed settlement as fair and reasonable.

17. By Order And Reasons filed January 11, 2013, Judge Barbier granted the Joint Motion and gave final approval of the Class Settlement.

18. Although Plaintiff opted out of the Class Settlement, or was excluded as a class member, the statements and declarations submitted by BP to support its motion to approve the settlement constitute judicial admissions or statements binding on the BP Defendants for purposes of this case. These statements include, but are not limited to, the statements set forth below:

   a. The Class Settlement incorporated a Specified Physical Conditions Matrix that set forth injuries that could reasonably be caused by exposure to crude oil or dispersants. The Joint Motion filed by the BP Defendants stated, "The Specified Physical Conditions Matrix accounts for medical conditions that reasonably could arise from exposure to oil, other hydrocarbons, or other substances released from the MC252 Well and/or *Deepwater Horizon* and its appurtenances, as well as exposure to dispersants or decontaminants used during the Response Activities." MDL Rec. Doc. 6267-1 at 15.

   b. The Declaration of Dr. Jessica Herzstein, offered as evidence by the BP Defendants, stated in part as follows: "As indicated above, medical literature supports the inclusion of the conditions listed on the Matrix. For example, direct dermal contact with components of oil and/or dispersants can cause skin irritation and rashes in the area(s) of contact. Macys, Capt. DA, *et al.*, *Results of a Workshop on Health Effects of Crude Oil Exposures Related to Operation Desert Storm*, Nav. Med. Res. Instit.: Bethesda, MD; 92:04, ¶¶ III.3.1.3. and III.3.3.3, 1992. Ocular contact with Volatile Organic Compounds (VOCs), by a direct chemical splash to the eye and by contact with oil mist or vapors, is known to cause eye irritation. Macys, at ¶ III.3.3.5. Neurologic symptoms can be caused by inhalation of certain VOCs at sufficient levels and duration. For example, inhalation of VOCs at levels of approximately

250 to 500 parts per million (ppm) has been associated with headache and nausea. Macys, at ¶ III.3.3.4. Headache and nausea are also recognized to occur as a result of unpleasant odors, which can be produced by much lower levels of VOC exposure. Hudnell, HK, *et al. Exposure of Humans to a Volatile Organic Mixture. II. Sensory*, Arch. Environ. Health 47(1):31-38, Jan-Feb 1992." MDL Rec. Doc. 7112-7.

## IV. CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**Negligence Related to the Oil Spill-General Maritime Law**
**(BP Defendants, Transocean and Halliburton)**

19. Plaintiff realleges each and every allegation set forth in all preceding paragraphs as if fully restated here.

20. As stated above, these Defendants have been found by this Court to be negligent and liable with respect to the blowout, explosion and oil spill.

21. As a result of the negligence of these defendants, Plaintiff has been exposed to crude oil, chemical dispersants, and the hazardous substances that are contained therein and, as a direct and proximate cause, has suffered both acute and chronic injury, including but not limited to the injuries set forth in Exhibit "A".

22. Therefore, Plaintiff is entitled to compensatory damages, including, but not limited to, past and future medical expenses, pain and suffering and the cost of medical monitoring, past and future lost wages and past and future lost personal services in a sum to be determined by the jury.

## SECOND CLAIM FOR RELIEF
### Negligence Related to the Response-General Maritime Law
### (BP Defendants and BP plc)

23. Plaintiff realleges each and every allegation set forth in all preceding paragraphs as if fully restated here.

24. The BP Defendants, as responsible parties under the Oil Pollution Act and other federal laws, and its responsibilities under the National Contingency Plan, along with BP plc, exercised control and directed all aspects of the response, recovery and relief effort to attempt to contain the Oil Spill, prevent oil from damaging the Gulf of Mexico and the shoreline, and to clean up the damage caused by the Oil Spill.

25. The BP Defendants, directly and through other parties, hired tens of thousands of individuals to assist in the response, recovery and relief effort (hereinafter sometimes referred to as "Clean-Up Workers").

26. The BP Defendants and BP plc owed a duty to Plaintiff, Clean-Up Workers and all persons who might foreseeably be harmed, to exercise due care in the operation, maintenance, handling, design, implementation and execution of the response, recovery and relief measures. Defendants failed to exercise reasonable care in the operation, maintenance, handling, design, implementation and execution of the response, recovery, and relief measures.

27. At all times relevant to this litigation, Defendants knew or should have known that:

    a. crude oil contains chemicals hazardous to human health and to the environment and ecosystems;

    b. chemical dispersants contain chemicals hazardous to human health and to the environment and ecosystems;

    c. Plaintiff should be adequately and timely warned of the harmful effects of crude oil and chemical dispersants, and the hazardous substances which they contain, which are being released into the environment;

    d. Plaintiff should have been adequately monitored for and protected from exposure to crude oil and chemical dispersants, but BP Defendants chose to not protect Plaintiff or other spill response workers as follows:

        i. Plaintiff should have been provided biological monitoring in the form of testing of blood, urine, and exhaled breath to detect the presence of toxins related to exposure to oil and dispersants. BP Defendants chose not to do this monitoring;

        ii. Biological monitoring would have provided information on the Plaintiff's total dose from inhalation, ingestion, and dermal exposure to the toxins in oil and dispersants at the time of exposure, and this information could have been used to prevent or mitigate Plaintiff's exposure. BP Defendants chose not to do this monitoring;

        iii. Plaintiff should have been provided with dermal exposure monitoring via wipe sampling at the time of exposure and this information could have been used to prevent or mitigate Plaintiff's exposure. BP Defendants chose not to do this monitoring;

        iv. Biological and dermal monitoring at the time of exposure could have provided exposure assessment data and helped determine the efficacy of personal protective equipment and the need for additional controls and/or

       changes in work practices to prevent further exposure and harm. BP Defendants chose not to do this monitoring;

  v. BP Defendants chose not to do this monitoring in order to conceal the occurrence and levels of toxic exposure to Plaintiff and other spill response workers;

  vi. BP Defendant's lead industrial hygienist, who held the highest level of responsibility for health and safety for the spill response, Dr. David Dutton, testified that no dermal testing was done and that BP Defendants merely relied upon the assumption that personal protective equipment was sufficient to protect spill response workers;

  vii. Additionally, though BP Defendants did provide personal exposure monitoring badges to up to 10% of spill workers which tested for known health-hazardous crude oil constituents benzene, carbon monoxide, toluene, xylenes, and total hydrocarbon, BP Defendants chose not to monitor for exposure to other known toxins associated with the oil spill including, but not limited to, hydrogen sulfide (known to be present in crude oil), polycyclic aromatic hydrocarbons (known to be present in crude oil), cleaning chemicals used at spill response decontamination sites, nor the toxic constituents of the dispersants that BP Defendants employed. The biological monitoring methods referenced above and personal exposure monitoring, if done with full effort and candor by BP Defendants based on the knowledge they had at the time, could have been used to prevent or

  mitigate Plaintiff's exposures or, at the least, provide relevant data to record and assess these exposures;

  viii. BP Defendants' choice not to perform the monitoring needed to obtain the above highly-relevant information and data constitutes spoliation of evidence; and

  ix. BP Defendants' conduct in this regard was and has been reckless, willful, wanton, and indifferent to the rights of Plaintiff and warrants the imposition of punitive damages against BP Defendants to protect this community against BP Defendants', or any other similarly-situated companies', engaging in this kind of conduct again.

 e. Defendants' knowing failure to otherwise exercise reasonable care in the operation, maintenance, handling, design, implementation and execution of the response, recovery and relief measures would result in harm to Plaintiff.

28. Defendants' conduct fell below the duty of care owed to Plaintiff amounting to a breach of that duty. Defendants owed Plaintiff the following duties:

 a. a duty to warn Plaintiffs, public officials, and government agencies of the harmful effects of crude oil, chemical dispersants and any mixture thereof, and the hazardous chemicals they contain;

 b. a duty to properly evaluate the medical condition of Plaintiff prior to assignment of response work duties;

 c. a duty to properly train and equip Plaintiff to avoid exposure to hazardous substances encountered in connection with relief efforts;

   d. a duty to properly train and equip Plaintiff to avoid injury from environmental hazards such as extreme heat;

   f. a duty to constantly evaluate the work conditions and hazards being encountered by Plaintiff, and to make necessary adjustments to the response plan;

   g. a duty to conform to the provisions of the National Contingency Plan relating to the use of aerial chemical dispersants in the proximity of vessels and shallow waters;

   h. a duty to coordinate and conduct aerial spraying sorties in a manner so as to eliminate the risk of vessels and crewmembers being exposed to aerial chemical dispersants; and

   i. a duty to otherwise exercise reasonable care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures to avoid harm to Plaintiffs.

29. Plaintiff suffered injury and loss as a result of Defendants' breaches of their aforementioned duties.

30. Defendants' breach of their duties posed an unreasonable risk of harm to Plaintiff.

31. The danger and risk of harm to Plaintiff was reasonably foreseeable.

32. As a result of the negligence of these defendants, Plaintiff has been exposed to crude oil, chemical dispersants, and the hazardous substances that are contained therein and, as a direct and proximate cause, has suffered both acute and chronic injury, including but not limited to the injuries set forth in Exhibit "A".

33. Therefore, Plaintiff is entitled to compensatory damages, including, but not limited to, past and future medical expenses, pain and suffering and the cost of medical monitoring, past

and future lost wages and past and future lost personal services in a sum to be determined by the jury.

## THIRD CLAIM FOR RELIEF
### Negligence *Per Se*-General Maritime Law
### (Response and Clean-Up Worker Plaintiffs vs. BP Defendants)

34. Plaintiff realleges each and every allegation set forth in all preceding paragraphs as if fully restated here and specifically incorporates Paragraph 27, *supra*, in this claim for relief.

35. BP Defendants, as responsible parties under the Oil Pollution Act and other federal laws, and its responsibilities under the National Contingency Plan, are subject to certain federal standards of conduct in connection with the response to the Oil Spill. These standards exist for the protection of workers and include, but are not limited to, the Occupational Safety and Health Standards codified in 29 C.F.R. Section 1910.120.

36. To the extent Plaintiff is protected by the above federal standards of conduct, Plaintiff seeks to establish liability and damages under this claim for relief.

37. The regulatory standards set forth in 29 C.F.R. Section 1910.120 were violated by the BP Defendants as follows:

   a. Failure to design and implement an adequate safety and health program (29 C.F.R. 1910.120(b) *et seq.*);

   b. Failure to identify specific site hazards and determine and implement appropriate safety and health control procedures (29 C.F.F. 1910.120(c)-(d) *et seq.*);

   c. Failure to design and implement appropriate training for employees working on site (29 C.F.R. 1910.210(e) *et seq.*);

   d. Failure to design and implement an adequate medical surveillance program (29 C.F.R. 1910.210(f) *et seq.*);

    e.   Failure to design and implement adequate engineering controls, work practices and personal protective equipment for employee protection (29 C.F.R. 1910.210(g) *et seq.*);

    f.   Failure to design and implement as adequate system of monitoring for hazardous substances (29 C.F.R. 1910.210(h) *et seq.*); and

    g.   Failure to design and implement adequate decontamination procedures (29 C.F.R. 1910.120(k) *et seq.*).

38.    Defendants' violations of these statutory and/or regulatory standards constitute negligence *per se* and are evidence of reckless and grossly negligent conduct.

39.    As a result of the negligence *per se* of these defendants, Plaintiff has been exposed to crude oil, chemical dispersants, and the hazardous substances that are contained therein and, as a direct and proximate cause, has suffered both acute and chronic injury, including but not limited to the injuries set forth in Exhibit "A".

40.    Therefore, Plaintiff is entitled to compensatory damages, including, but not limited to, past and future medical expenses, pain and suffering and the cost of medical monitoring, past and future lost wages and past and future lost personal services, and punitive damages, in a sum to be determined by the jury.

**FOURTH CLAIM FOR RELIEF**
**Gross Negligence-General Maritime Law**
**(BP Defendants)**

41.    Plaintiff realleges each and every allegation set forth in all preceding paragraphs as if fully restated here, and specifically incorporates Paragraph 27, *supra*, in this claim for relief.

42.    As stated above, BP Defendants have been found to be reckless as to the blow out, explosion and resulting Oil Spill.

43. BP Defendants have taken control and responsibility for all aspects of the recovery and relief effort to attempt to contain the Oil Spill, prevent oil from damaging the Gulf of Mexico and the shoreline, and to clean up the damage caused to date, including the use of hazardous chemical dispersants. BP Defendants owed and breached a duty to Plaintiff, as well as to all persons who might foreseeably be harmed, to exercise due care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures.

44. The existence and breach of these legal duties are established under the General Maritime Law, the Maritime Law as it exists in the applicable federal judicial district in which Plaintiff was injured or resides, and state law as deemed applicable herein.

45. As set forth above, BP Defendants have violated regulatory standards that exist for the protection of response and clean-up workers and are, thus, negligent *per se*.

46. BP Defendants had a heightened duty of care to Plaintiff because of the great danger associated with exposure to oil, dispersants, and/or other hazardous chemicals.

47. Defendants breached their legal duty to Plaintiff by failing to exercise reasonable care and thereafter by acting with reckless, willful, and wanton disregard in their failure to contain the Oil Spill and properly protect Plaintiff from its repercussions.

48. Defendants knew or should have known that their wanton or reckless conduct would foreseeably cause personal injury to Plaintiff.

49. Defendants' wanton or reckless conduct, as described herein, entitles Plaintiff to punitive damages. The amount of punitive damages recoverable by Plaintiff is not lawfully limited to the amount of their compensatory damages, but rather should be a multiplier of same sufficient to both punish Defendants and deter similar wrongdoing in the future.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

a. As to the First Claim for Relief, Plaintiff is entitled to compensatory damages, including, but not limited to, past and future medical expenses, pain and suffering and the cost of medical monitoring, past and future lost wages and past and future lost personal services in a sum to be determined by the jury;

b. As to the Second Claim for Relief, Plaintiff is entitled to compensatory damages, including, but not limited to, past and future medical expenses, pain and suffering and the cost of medical monitoring, past and future lost wages and past and future lost personal services in a sum to be determined by the jury;

c. As to the Third Claim for Relief, Plaintiff is entitled to compensatory damages, including, but not limited to, past and future medical expenses, pain and suffering and the cost of medical monitoring, past and future lost wages and past and future lost personal services in a sum to be determined by the jury; and

d. As to the Fourth Claim for Relief, Plaintiff is entitled to punitive damages in an amount to be determined by the jury, in order to protect this community and to discourage the BP Defendants from engaging in this kind of conduct again.

Respectfully submitted,

/s/ Paul A. Dominick
Paul A. Dominick      Fed ID No. 577
NEXSEN PRUET, LLC
205 King Street, Suite 400 (29401)
P.O. Box 486
Charleston, SC  29402
PHONE:  843.577.9440
FACSIMILE:  843.720.1777

PDominick@nexsenpruet.com

and

Douglas M. Schmidt    Fed ID No. 11789
Douglas M. Schmidt, APLC
335 City Park Avenue
New Orleans, LA 70119
PHONE:  504-482-5711
FACSIMILE:  504-482-5755
Dglsschmdt@yahoo.com

and

Timothy J. Falcon, #16909
Jeremiah A. Sprague, #24885
Jarrett S. Falcon, #34539
Jennifer L. Martin, #34663
FALCON LAW FIRM
5044 Lapalco Boulevard
Marrero, Louisiana 70072
Telephone: (504) 341-1234
Facsimile: (504) 348-7714
tim@falconlaw.com
jerry@falconlaw.com
jarrett@falconlaw.com
jenni@falconlaw.com

Attorneys for Plaintiff(s)

August 22, 2021

## CERTIFICATE OF SERVICE

I hereby certify that the Plaintiff(s)' foregoing Amended Complaint with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing to all counsel of record. I further certify that I served the foregoing document and notice of electronic filing by U.S. Mail or electronic mail to any non-CM/ECF participants on August 22, 2021.

          /s/ Paul A. Dominick
          Paul A. Dominick